UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ME2 Productions, Inc.,<br><br>           Plaintiff,<br>    vs.<br><br>Kammy Lau et al.,<br><br>           Defendants. | Civil No.: 17-00155 JMS-KSC<br>(Copyright)<br><br>FINDINGS AND RECOMMENDATION TO PARTIALLY GRANT PLAINTIFF'S THIRD MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT KAMMY LAU |

FINDINGS AND RECOMMENDATION TO PARTIALLY GRANT PLAINTIFF'S THIRD MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT KAMMY LAU

Plaintiff ME2 PRODUCTIONS, INC's (hereafter: "Plaintiff"), Third Motion for Default Judgment Against Defendant KAMMY LAU ("Defendant"), filed herein on December 7, 2017, [Doc. #56], having come on for hearing before the Court, the Honorable Kevin S.C. Chang, Magistrate Judge presiding, with Kerry S. Culpepper appearing for Plaintiff and there being no appearance and no written submission by or on behalf of the Defendant, the Court, after full consideration of Plaintiff's motion and the entire record herein, RECOMMENDS that the motion be GRANTED in part.

1

This is an action for permanent injunctive relief and damages against Defendant for copyright infringement in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

Plaintiff is a Nevada corporation that owns the copyright for the motion picture *Mechanic: Resurrection* (hereafter: the "Work") under registration number PA 1-998-057. [Doc. # 47, ¶¶ 6, 8 and 23, Doc. # 47-2].

Plaintiff commenced this action by filing its Complaint on April 5, 2017 against 20 Doe individuals [Doc. # 1] after discovering that Defendant had illegally downloaded the Work using the BitTorrent protocol. [Id. ¶¶ 11-39].

BitTorrent is an interactive "peer-to-peer" ("P2P") file transfer technology protocol whereby users can: (a) make media files (including entire movies) stored on each user's computer available for copying by other users or peers; (b) search for files that are stored on other users' computers; and (c) transfer exact copies of those files from one computer to another via the Internet. [Id. ¶¶ 27-39].

Thereafter, Plaintiff ascertained the true identities of the individuals who illegally downloaded and distributed the Work by subpoenaing Hawaiian Telcom, the Internet Service Provider of Defendant. [Doc. # 11].

Plaintiff's Complaint was then amended to specifically identify the Defendant. [Doc. # 30]. Plaintiff effected service on Defendant with a summons on September 3, 2017, making her answer due on September 24, 2017. See Fed. R. Civ. P. 12(a)(1)(A). [Doc. #32].

Defendant is the individual at IP address 72.234.113.150 who infringed the Plaintiff's copyrighted Work and seeded and distributed the work on 2016-11-23 00:42:01 (UTC).

Using the BitTorrent client application "Popcorn Time", Defendant illegally republished and distributed copies of the Plaintiff's copyrighted work through the use of the unique hash number to an unknown number of other individuals over the Internet. This contention is undisputed.

When Defendant failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on October 3, 2017 [Doc. # 37], which was promptly granted by the Court. [Docs. # 38, 39].

On October 30, 2017, this Court granted Plaintiff's motion for leave to file a Second Amended Complaint to merely correct the spelling of Defendant's name. [Doc. #46].

Plaintiff filed the Second Amended Complaint on October 30, 2017. [Doc. #47]. A copy of the second amended complaint was sent to Defendant's last known address on November 9, 2017 [Doc. #48] making her answer due on November 23, 2017. See Fed. R. Civ. P. 15(a)(3). [Doc. #53].

When Defendant once again failed to appear, plead, or otherwise defend, Plaintiff filed a Rule 55(a) request for the entry of default on December 5, 2017 [Id.], which was promptly granted by the Court. [Doc. #54].

The Complaint alleges claims for copyright infringements, in violation of the United States Copyright Act, 17 U.S.C. § 101 et. seq., for distributing copies of Plaintiff's Work.

A plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006). Plaintiff has pled facts to establish the necessary elements of copyright infringements.

Because Defendant has chosen to default instead of defending, she has admitted the truth of the allegations asserted in the Second Amended Complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). While the Court may conduct a hearing to determine damages, *See* Fed. R. Civ. P. 55(b)(2), the Court can rely on evidence submitted by Plaintiff. *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

When evaluating whether to grant a judgment by default, the Court should consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).

All of these factors support the conclusion that Plaintiff is entitled to a default judgment.

### 1. The possibility of prejudice to Plaintiff

Plaintiff would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiff without any remedy against Defendant, who

has failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Despite the fact that Defendant doesn't deny that Plaintiff is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against her, Plaintiff would be left unable to seek damages or even to prevent Defendant from brazenly continuing to infringe Plaintiff's copyright. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

**2. & 3. The merits of Plaintiff's substantive claim and the sufficiency of Amended Complaint**

Plaintiff has adequately pled its claim for copyright infringement. In its Second Amended Complaint, Plaintiff alleged that it owns the copyright for the Work and attached a valid Certificate of Copyright Registration issued by the Register of Copyrights. [Doc. #47, at ¶¶ 8, 23; Doc. #47-2]. Moreover, because the factual allegations of the Second Amended Complaint are deemed true, Plaintiff has conclusively established that Defendant infringed upon Plaintiff's copyright and that her infringement was both knowingly and willful. [Doc. #47, at ¶¶ 11-16, 56-70].

**4. The sum of money at stake in the action**

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

**5. The possibility of a dispute concerning the material facts**

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the Second Amended Complaint as true. *See TeleVideo Sys., Inc. v. Heidenthal, supra*, 826 F.2d at 917–18. Moreover, Defendant has not made any attempt to contest those allegations (or for that matter, even bothered to appear).

**6. Whether the default was due to excusable neglect**

Defendant's default is not the result of excusable neglect. Defendant was served by a process server on August 12, 2017, who effected service by leaving the summons and a copy of the original complaint with an adult named Nicole Lau at the residence of Defendant. [Doc. # 31]. Defendant was served by a process server on September 3, 2017, who effected service by leaving the summons and a copy of the First Amended Complaint with an adult named Darlynn Sakurai at 91-1130 Mikohu St. [Doc. # 32]. Further, Plaintiff's counsel has exchanged emails with Defendant's mother, Defendant's grandmother and Defendant herself. [Doc. ##49-1, 49-2, 49-2, 49-3 and 49-4].

Rule 5 governs service of "every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants." Fed.

7

R. Civ. P. 5(a). As stated by the Ninth Circuit in *Employee Painters' Trust v. Ethan Enters.*, an amended complaint, such as the Second Amended Complaint here, falls squarely within the provisions of Rule 5. *See Employee Painters' Trust v. Ethan Enters*, 480 F.3d 993, 999 (9th Cir. 2007). Rule 5(b)(2)(C) provides that service can be made by mailing the pleading to the person's last known address. Fed. R. Civ. P. 5(b)(2)(C). Plaintiff has mailed a copy of the Second Amended Complaint to Defendant's last known address and also emailed a copy of it to her email address. [Doc. #49]. In *Employee Painters' Trust* the Ninth Circuit stated that "service of the amended complaint was complete when plaintiffs sent it via first class mail". *Id.* at 1000. Accordingly, the service of the second amended complaint here has been properly effected per Rule 5(b)(2)(B).

Thus, on several occasions, Defendant has been provided with notice of this proceeding and of the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (reasoning that excusable neglect is not present when Defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7. **The policy considerations**

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiff default judgment. Absent a judgment by default, Plaintiff will not be made whole and has no mechanism to prevent further infringement of its copyright by this same Defendant. In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiff a default judgment against Defendant.

DAMAGES

## A. Plaintiff is entitled to Statutory Damages for Willful Copyright Infringement.

Plaintiff seeks to receive statutory damages of no less than $750 for Defendant's infringement of the Work. Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per

work for Defendant's violations of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2). The Court finds that an award of statutory damages of $750.00 is appropriate.

### B. Plaintiff is entitled to injunctive relief.

Plaintiff requests that the Court: grant its request for injunctive relief, permanently barring Defendant from directly and contributorily infringing Plaintiff's copyright in the Work; issue an order requiring Defendant to destroy all illegal copies of the copyrighted movie, including electronic files and copies transferred onto any physical medium or device in their possession, custody, or control; and order Defendant to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading content in violation of U.S. copyright law in the future.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement. *See* 17 U.S.C. §502(a)(2) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . .of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).

Permanent injunctions are commonplace in these cases: "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 520 (9th Cir.1993). Moreover, irreparable harm is presumed in copyright infringement cases on a showing of success on the merits. See *A&M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896, 925(N.D.Cal.2000) reversed in part on other grounds, citing *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998).

Here, Plaintiff has demonstrated that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined. Because of the way the BitTorrent protocol operates, every downloader of the content is also an uploader; thus, the distributed nature of BitTorrent leads to a rapid, almost viral, spreading of a file through peer users. [Doc. #47 ¶¶ 42-48]. This also means that every user who has a copy of the infringing material may also be a source for later downloads of the material, so long as the first user remains part of the BitTorrent network and is online at the time a subsequent user requests the file. [Id.] Such widespread and uncontrolled infringement is, by its very nature, irreparable.

The Plaintiff's investigative software [Id. at ¶¶ 49-50] has confirmed that a BitTorrent client application at the IP address 72.234.113.150, which is the IP address used by Defendant to infringe the Work, has copied a torrent file for the

11

movie *Kidnap* as recently as September 2, 2017. [Doc. #40-4]. Accordingly, Defendant has likely continued to use a BitTorrent client application subsequent to receiving notification of this lawsuit.

Therefore, the Court finds that Plaintiff is entitled to injunctive relief prohibiting Defendant from directly and contributorily infringing Plaintiff's rights in the Work including without limitation by using the Internet to reproduce or copy the Work, to distribute the Work, or to make the Work available for distribution to the public, except pursuant to a lawful written license or with the express authority of Plaintiff in the future except pursuant to a valid license. Additionally, the Court recommends that Defendant be ordered to destroy all unauthorized copies of the Work in her possession or subject to her control.

### C. **Plaintiff is entitled to attorneys' fees and costs.**

Pursuant to 17 U.S.C. § 505, this Court may award reasonable attorneys' fees and costs incurred in litigating a copyright infringement action—and courts typically do make such awards. "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989).

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher*

Case 1:17-cv-00155-JMS-KSC Document 69 Filed 03/16/18 Page 13 of 15
                      PageID.329

*v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (quoting *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988), *reinstated,* 886 F.2d 235 (1989), cert. denied*,* 494 U.S. 1091, 110 S. Ct. 1838, 108 L. Ed. 2d 966 (1990)), and (5) the contingent nature of the fee agreement," *City of*

13

*Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the "lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. Although attorneys are required to provide evidence that the rate charged is reasonable, *see Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.

In a similar case, the Court determined that an hourly rate of $250 including taxes was appropriate for Plaintiff's counsel. See *ME2 Prods., Inc. v. Pumaras¸* Civ. No. 17-00078 SOM/RLP, 2017 WL 4181344, at 7 (D. Haw. Sept. 21, 2017).

The Court has determined that the appropriate award of attorneys' fees, costs and tax in this matter is $471.20.

Based on the foregoing, the Court RECOMMENDS that Plaintiff's Motion be GRANTED IN PART and that default judgment enter as follows: 1) award

Plaintiff $750.00 in statutory damages; 2) award Plaintiff $471.20 in attorneys' fees, costs and taxes; 3) permanently enjoin Defendant from directly, indirectly and contributorily infringing Plaintiff's rights in the Work *Mechanic: Resurrection*, including without limitation by using the Internet to reproduce or copy the Work or to make the Work available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff; and 4) order Defendant to destroy all unauthorized copies of the Work in her possession or subject to her control.

IT IS SO FOUND AND RECOMMENDED

DATED: Honolulu, Hawaii, March 16, 2018.



Kevin S.C. Chang
United States Magistrate Judge

ME2 PRODUCTIONS, INC. v. KAMMY LAU et al.; CV 17-00155-JMS-KSC; FINDINGS AND RECOMMENDATION TO PARTIALLY GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT KAMMY LAU